No. 18,938.

O. B. CLEVELAND, *Appellant,* V. H. L. MILLS et al., *Appellees.*

SYLLABUS BY THE COURT.

1. PLEADINGS — *Written Contract — Unverified Denial — Issue Raised.* Where a plaintiff sets forth a written contract in his petition and seeks a remedy only under the provisions thereof, and the defendant pleads only by an unverified denial, the only proper issue is whether the plaintiff ·has so performed the conditions of the written contract as to entitle him to recover.

2. SAME—*Departure from Pleadings—Not. Reversible Error.* Where, however, on the trial of the action the defendant, without any proper objection by the plaintiff, produces evidence that immediately after the execution of the written contract the parties made an oral agreement substantially different from· the written contract, and it appears that in

55—92 KAN

conducting the business between them both parties ignored the written contract and settled many different items more nearly in accordance with the oral than with the written contract, and where the court makes findings and renders judgment in substantial accordance with the ·evidence, *held*, that the judgment will not be reversed by reason of the departure from the issues as made by the pleadings.

Appeal from Harper district court; GORDON L. FINLEY, judge *pro tem.* Opinion filed July 7, 1914. Affirmed.

*A. C. Beeman,* and *H. C. Kirkendall,* both of Cherokee, Okla., for the appellant.

*George E. McMahon,* of Anthony, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This action was brought upon a written contract which was attached to and made a part of the petition. The contract is copied in full in *Mills v. Cleveland,* 87 Kan. 549, 550, 125 Pac. 58.

The answer was a general denial, "save and except the allegations of partnership which they admit."

The case was tried without a jury. There was no counterclaim or set-off pleaded in the answer, and the answer not being verified the allegation of the execution of the contract was admitted. The issue, therefore, was strictly under the written contract as to whether the plaintiff was entitled to recover for his services thereunder. All other issues could have been excluded by the appellant upon timely objection to any evidence constituting a departure from the issue tendered by the petition.

It appears by the written contract that prior to the making of the contract Dr. Cleveland and Dr. Mills had been partners in conducting a sanitarium, treating patients, and selling formulas used by them in healing patients, and the right to sell such formulas was thereafter to be exercised by both the new firm and by Dr. Cleveland, and the proceeds of such sales

were to be divided. No question as to such sales is in issue in the case.

Dr. Cleveland was a witness for himself, testified as to the patients he had attended or assisted in attending both in and away from the sanitarium, and testified that the appellees had kept the books and that he did not know in all cases what charges were made or what collections had been made, but testified that to the best of his memory the fees for January were $1150, and that he also did work thereafter for which he claimed one-half the compensation.

H. E. Thompson, one of the defendants, called as a witness, was asked:

"Q. And now what was said, if anything, shortly after this contract had been made and signed up by all the parties, about the treatment of patients in the sanitarium by the new firm, during the month of January? A. After the contract was signed and in triplicate, to reach all the parties, the question was brought up whether or not Dr. Mills would be well enough to go ahead with the business, providing there was any during the month of January, and it was, at this time, that Dr. Cleveland said that if he would be allowed to go ahead and live in the sanitarium; finish up his old patients that he had prior to the making of the contract and board and room them—let Mother Cleveland have the money—he would do the work through January free or until such time as his house was built, if Dr. Mills was not able to do the work and he would not charge anything for it."

Also, the following question was asked and answer given:

"Q. Well, was that agreed to by the new firm—that proposition made by Dr. Cleveland? A. That was the understanding all around. Dr. Cleveland completed his building so that he moved out of the sanitarium after the middle of February. He did some work for the firm at the sanitarium after he moved into his own house. For the cases, that he treated at the sanitarium and was paid for, he received 33⅓ per cent. Dr. Cleveland, in just one case, did work for Mills & Thompson in which he, under

this contract, was to receive half of the net proceeds and that was a case at Cunningham, northwest of Kingman. Dr. Cleveland collected that himself and divided it as per contract, after the expenses were taken out. During the month of January, while Dr. Cleveland was at the sanitarium doing the work, he collected $50 from Forsythe, $50 from Sellman, $95 from Clay and $100 from Charles for treatments and turned it over to me. He made no claim at that time that he was entitled to any portion of it. The first time that I ever heard that he made any claim that he was entitled to any share of the money that was earned there during the month of January, was when Mr. Washbon came down to the sanitarium sometime last summer or fall and said that Dr. Cleveland had been up there time and again to see him and Mr. Noftzger and that Dr. Cleveland would not hear of anything else but what he should come down and ask for the books and said we owed him a certain sum of money. He did not know what it was and had not paid much attention to it, but to relieve Dr. Cleveland's mind he came down and he made the remark at the time that he supposed I would turn the books over but I refused to do it. During the month of January, when these patients were being treated, Dr. Mills was at the sanitarium every day and he had as much to do with it as Dr. Cleveland did—they worked together."

This presents the principal question in this case. The pleadings presented no issue in regard to an oral contract made after the written contract was executed. A great deal of evidence was offered in reference to such oral contract, and we find no objection made thereto, except to the one question above, that it was "incompetent."

The attention of the court does not seem to have been called to the fact that the evidence was not within the issues, and the objection as made was not well taken. The evidence was competent if it was relevant.

By a liberal construction of the objection "incompetent" it might be applied as meaning that the evidence called for by the question, viz., that some talk was had that, notwithstanding the writing, affected

the rights of the parties, was not pertinent or relevant to the issues made by the pleadings. In the connection in which the word was used, however, this does not appear to be the ordinary meaning thereof. However this may be, the case should not be reversed on account of the ruling. The issue was fully tried out on this oral agreement. The plaintiff as well as the defendants produced evidence in reference thereto.

It also appears that for much of the business attended to by Dr. Cleveland while Dr. Mills was sick or away, during the month of January following the making of the contract, that he was paid one-third of the amount received from the patients whom he treated, and that the doctor himself collected the first fee that was divided in this way, and that the fees for all patients subsequently treated by him at the sanitarium, for which settlement was made, were divided in the same proportions as he had divided the first fee, and without objection on his part.

Dr. Mills was sick or absent, as said, from the sanitarium, and during that time Dr. Cleveland wrote many of the contracts with the patients in the name of the new firm, using the old blanks which contained his name, and from which he scratched his name in making the contract. It is contended by the appellees that in so doing he did not comply with the written contract which provided that in cases where he assisted in treating patients by request of the appellees said Cleveland "shall assume equal responsibility, and for his personal services and the assumption of such responsibility shall receive as compensation one-half of the net fees in each and every such case."

As we have seen, both parties departed from the provisions of the written contract in their dealings. Neither the written contract nor the oral contract was strictly followed, but different settlements were made from time to time as to different patients. These settlements include a large share, if not all, of the

claims litigated in this case, and no substantial disagreement seems to have existed between them in regard to the division of fees until thirty months after the contracts were made and until another lawsuit had been had between them.

Plaintiff made no claim to defendants for any additional compensation or asked for any settlement until about June 1, 1912, and more than two years after his last treatment of a patient in the sanitarium.

In its conclusions of law the court found that the parties to the contract have construed the contract, and their construction should not be disturbed. As before said, the case was fully tried out, and we think that while strict adherence to the issues set forth in the pleadings was not adhered to, that substantial justice in the case was done.

The judgment is affirmed.